# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

UNITED STATES OF AMERICA,

    Plaintiff,

v.

DANIEL SPENCER,

    Defendant.

Case No. 2:10-CR-0616-KJD-GWF

**ORDER**

    Presently before the Court is Defendant Daniel Spencer's Motion to Withdraw Guilty Plea (#125). Plaintiff filed a response in opposition (#130).

I.  Background

    On December 22, 2010, a Federal Grand Jury returned an indictment charging Defendant with three counts of mail fraud. On April 27, 2011, a Federal Grand Jury returned a separate indictment against Defendant charging Defendant with one count of mail fraud. This subsequent indictment was assigned case number 2:11-cr-164-KJD-PAL. On July 13, 2011, a Federal Grand Jury returned a superseding indictment charging Defendant with five counts of mail fraud. The superseding indictment combined the three counts of mail fraud in this case and the mail fraud count in case number 2:11-cr-164-KJD-PAL into one indictment. The superseding indictment also added one additional count of mail fraud.

Originally, Defendant was represented by the federal public defender. On January 21, 2011, attorney Joel Mann replaced the public defender. On July 17, 2012, Defendant requested a new attorney. On August 2, 2012, the court granted Defendant's motion and appointed Mr. Hunterton to represent Defendant.

On November 29, 2012, less than four months after his appointment, Mr. Hunterton moved to withdraw as counsel based upon a scheduling conflict (#80). That motion was denied (#85). On December 6, 2012, Defendant filed a Motion to Continue or Permission to Withdraw by Daniel Phillip Spencer (#86). On December 13, 2012, this Court granted Defendant's motion, continuing the calendar call to May 14, 2013.

On May 10, 2013, Defendant raised with Mr. Hunterton the possibility of pleading guilty. See Affidavit Submitted in Connection with Defendant Daniel Spencer's Motion to Withdraw Guilty Plea (hereinafter "Hunterton Affidavit"), Exhibit A, Doc. No. 131. Mr. Hunterton "reviewed with [Defendant] the canvass the Court would take him through in order to accept a [change of plea], including the fact that he would have to admit guilt. Hunterton Affidavit at 2.

On May 13, 2013, Defendant confirmed with Mr. Hunterton that he wanted to plead guilty. Id. Mr. Hunterton spent the entire day with Defendant working out a plea agreement with the Government. Id. Mr. Hunterton went over a draft of the plea agreement with Defendant in detail and Defendant signed it. Id.

On May 14, 2013, pursuant to a signed plea agreement, Defendant pled guilty to counts one and two of the superseding indictment. Before the change of plea hearing, Mr. Hunterton again met with Defendant and went over the canvass he would be given by the Court. Hunterton Affidavit at 2.

At the hearing, Defendant swore to tell the truth. See Transcript ("Tr.") May 14, 2013, Change of Plea Hearing, Exhibit 2 (#132), Tr. 2/22-25. He acknowledged that he understood that his answers were subject to the penalties of perjury. Tr. 3/5-8. Defendant testified that he had adequate opportunity to discuss his case with his attorney. Tr. 6/20-7/14. When this Court asked Defendant if he was satisfied to have Mr. Hunterton continue to represent him, Defendant responded with an

emphatic "Absolutely." *Tr*. 7/14. Defendant testified that no one had threatened of forced him to plead guilty. *Tr*.11/24-12/8. Defendant testified that he signed, read, went over with his attorney, and his attorney answered all his questions regarding the plea agreement. (Doc 98). *Tr*. 12/9-16. Further, Defendant agreed that everything inducing him to plead guilty was in the plea agreement. *Tr*. 12/21-23. Pursuant to the Court's instruction, the government summarized the plea agreement including the following:

    1. "The defendant will not seek to withdraw his guilty pleas after he entered them in court." *Tr*. 13/22-23.

    2. That a two-level guideline enhancement applied for defendant's leadership role. *Tr*. 14/12.

The Court then confirmed with Defendant and Mr. Hunterton that the government correctly stated the essential terms of the plea agreement. *Tr*. 16/20-17/3. At that time, Defendant did not contest the two-level leadership enhancement. The Court confirmed that Defendant had gone over the sentencing guidelines with Mr. Hunterton. *Tr*. 18/11-25. Defendant also admitted that the proceeds of the transactions went into the corporate bank account, *Tr*. 20/18/22, that the proceeds were for the corporations benefit, he was the owner of the corporation, *Tr*. 21/3-9, and he received a considerable amount of the money from the loans, all indicia of leadership. *Tr*. 28/2-7.

Defendant agreed that he was pleading guilty because he was in fact guilty and for no other reason. *Tr*. 29/21-23

After its canvass, the Court found that "defendant's pleas of guilty [were] knowing and voluntary…. *Tr*. 30/2-6. The Court scheduled Defendant's sentencing for August 20, 2013. On June 19, 2013, codefendant and cooperator Donald Sabisch was sentenced to a term of probation. The government had moved six times to continue Sabisch's sentencing until after he had an opportunity to testify at Defendant's trial (##52/55/59/64/78/94). Once Defendant had entered his guilty plea, it appeared that Sabisch's testimony would no longer be needed and the government proceeded with his sentencing.

On October 7, 2013, Defendant filed the present motion, Defendant Daniel Spencer's Motion to Withdraw Guilty Plea (#125). On October 8, 2013, the government moved this Court to waive the attorney-client privilege between Defendant and Mr. Hunterton based upon Defendant's Motion putting their communications at issue. This Court granted the motion.

II.  Motion to Withdraw Guilty Plea Analysis

Federal Rule of Criminal Procedure 11(d)(2)(B) provides that a defendant may withdraw from a plea of guilty before sentencing if "the defendant can show a fair and just reason for requesting the withdrawal." Fed.R.Crim.P. 11(d)(2)(B). Although this standard is "generous and must be applied liberally," a defendant cannot be permitted to withdraw his guilty plea " 'simply on a lark .'" United States v. McTiernan, 546 F.3d 1160, 1167 (9th Cir. 2008) (quoting United States v. Hyde, 520 U.S. 670, 676–77 (1997)); United States v. Ensminger, 567 F.3d 587, 593 (9th Cir. 2009) ("[A] change of heart-even a 'good faith change of heart'—is not a fair and just reason that entitles [a defendant] to withdraw his plea, even where the government incurs no prejudice." (citing United States v. Rios–Ortiz, 830 F.2d 1067, 1069 (9th Cir. 1987))). Moreover, a defendant has no right to withdraw his guilty plea, United States v. Alber, 56 F.3d 1106, 1111 (9th Cir. 1995), and the burden is on the defendant to demonstrate a fair and just reason to withdraw from the plea, United States v. Davis, 428 F.3d 802, 805 (9th Cir. 2005); United States v. Ortega–Ascanio, 376 F.3d 879, 883 (9th Cir. 2004); United States v. Nostratis, 321 F.3d 1206, 1208 (9th Cir. 2003). See also Ensminger, 567 F.3d at 594 ("Once the plea is accepted, permitting withdrawal is, as it ought to be, the exception, not an automatic right.").

"Fair and just reasons for withdrawal include inadequate Rule 11 plea colloquies, newly discovered evidence, intervening circumstances, or any other reason for withdrawing the plea that did not exist when the defendant entered his plea." United States v. Jones, 472 F.3d 1136, 1141 (9th Cir. 2007); see also McTiernan, 546 F.3d at 1167. Statements made during the plea hearing are entitled to a strong presumption of veracity in later attacks on the plea, United States v. Ross, 511 F.3d 1233, 1236–37 (9th Cir. 2008), and a court may also consider the time elapsed between the entering of such

a plea and the defendant's withdrawal request, United States v. Garcia, 401 F.3d 1008, 1013 (9th Cir. 2005)).  Ultimately, however, each case must be reviewed in the context in which the motion to withdraw guilty plea arose to determine whether a fair and just reason exists. McTiernan, 546 F.3d at 1167.

Having read and considered Defendant's claims and the underlying colloquy and admissions at Defendant's change of plea hearing, the Court must deny Spencer's motion to set aside his guilty plea. Defendant asserts that he failed to understand the charges brought against him, and that he attempted to explain his innocence during the plea colloquy but due to his counsel's poor advice he was prevented from demonstrating his evidence.  However, upon a close examination of the record, Defendant's claims are belied by his own voluntary and knowing admissions during the course of the Court's questioning.  Statements made during the plea hearing are entitled to a strong presumption of veracity in later attacks on the plea.  See Ross, 511 F.3d at 1237.

First, Defendant asserts that he attempted to explain that he did not have a leadership role in the underlying scheme and that the Court "glossed over his explanation" and counsel failed to interject in his favor.  However, the brief snippet of the hearing referenced by Defendant was not aimed at addressing the leadership enhancement.  Instead, the Court, initiating the colloquy to determine whether Defendant was knowingly and voluntarily pleading guilty, asked Defendant what he was there [in court] to do that day.  Defendant failed to directly answer the question.  However, Defendant was not attempting to discuss the leadership enhancement, but merely to accept responsibility for his part in the scheme, stating "... I was still party to it and the buck stops here." The Court clarified Defendant's statement by asking, "So you're intending to plead guilty?  Is that what . . . you're telling me?" Defendant responded by answering, "I am."  Thus, contrary to Defendant's assertion, the Court did not gloss over his statement, but clarified that Defendant's purpose was to plead guilty and Defendant agreed.  Furthermore, the Court questioned Defendant who admitted that he had reviewed the plea agreement with his counsel, Mr. Hunterton, that Mr. Hunterton had answered all of his questions and done all that Defendant had asked.  The plea

5

agreement clearly disclosed the leadership enhancement, and Defendant was given the chance but did not dispute it. Therefore, these claims are not "fair and just reason[s] for withdrawal."

Second, Defendant claims that Hunterton did not review the evidence with him. In order to support this claim, Defendant relies on these three lines parsed from the transcript of the hearing,

> THE COURT: Have you discussed the evidence of the Government?
> THE DEFENDANT: Somewhat, yes - -
> THE COURT: Okay

*Tr. 6/22-25*. However, the Court's questioning before and after these lines reveals a complete picture of what transpired:

> THE COURT: Mr. Spencer, have you had an adequate opportunity to discuss your case with Mr. Hunterton?
> THE DEFENDANT: I have.
> THE COURT: Have you discussed the evidence of the Government?
> THE DEFENDANT: Somewhat, yes - -
> THE COURT: Okay
> THE DEFENDANT: - - I - -
> THE COURT: Have you - -
> THE DEFENDANT: - - have.
> THE COURT: - - have you discussed potential defenses?
> THE DEFENDANT: Yes.
> THE COURT: Are - - is there anything that you've asked Mr. Hunterton to do in connection with your defense that he has failed to do?
> THE DEFENDANT: Absolutely not.
> THE COURT: Okay. And are you satisfied to have him continue to represent you in this matter.
> THE DEFENDANT: Absolutely.
> THE COURT: Okay.

*Tr. 6/20-25-7/1-15*. Reading the exchange in context, especially given Defendant's inclination to talk over the Court, it is clear that he was not dissatisfied with Mr. Hunterton's discussion of the evidence. He stated, "Yes, I have" in clarification of his "somewhat" comment. The pause after "somewhat" may indicate an intention to change an equivocal answer to an unequivocal answer. Defendant certainly made clear in the next few questions that he was absolutely satisfied with Hunterton's representation.

Third, though Defendant argues that the Government successfully employed a scare tactic by mentioning perjury during the Court's colloquy as to the facts needed to accept a guilty plea,[1] it is clear that Defendant was not intimidated by the Government's inquiry when he stated that he had "no problem" with making his statements under the penalty of perjury. Further, it is clear that Defendant merely clarified which fraudulent conduct he felt that he had personally participated in and which he had not in his role as a broker, rather than the loan officer. The conference between Defendant and his attorney did not appear to materially alter his admissions. Upon close examination by the Court, see *Tr.25/9-20*, Defendant admitted to concealing and causing to be concealed the true value of the homes. This admission was made before the attorney-client discussion referenced at *Tr.27/12*. Essentially, the transcript shows that Defendant's admissions were consistent throughout the proceeding notwithstanding the Government's inquiry about perjury and the attorney-client conference. Finally, at the end of the Court's colloquy, Defendant was specifically asked by the Court: "Are you pleading guilty because in truth and in fact you are guilty and for no other reason?" Defendant answered in the affirmative. Given the opportunity to assert his factual innocence he declined to do so.

Finally, Defendant makes the bare assertion that he was not made fully aware of the possible sentencing he would receive as a result of his guilty plea. However, the Court advised the Defendant and he acknowledged that he was aware of the statutory maximums and the potential term of

---

[1] Defendant had already agreed to the facts as contained in the plea agreement that he had signed.

7

supervised release. See *Tr.10/11-24*. The Court further advised Defendant of the collateral consequences of his conviction and Defendant acknowledged those consequences. See *Tr.11/17-23*. Further, the Government recited for the Court the essential terms of the plea agreement including the sentencing guidelines agreed upon by the parties and Defendant acknowledged that the government's recitation was accurate. See *Tr.13/15-17/3*. The Court warned Defendant and Defendant acknowledged that he understood the Court was not bound by the parties' guideline calculation and could sentence Defendant up to the statutory maximum. See *Tr.17/4-19*. Defendant also acknowledged that his counsel had gone over the guidelines with him and he understood how they might be applicable to him. See *Tr.18/11-15*. Additionally, the Court warned Defendant and Defendant acknowledged that if he received a sentence more than that which was requested or recommended that he would not have the right to withdraw his guilty plea. See *Tr.17/11-19*. Defendant's sworn statements are given greater weight than Defendant's subsequent claim that he was not made fully aware of the consequences of his plea. See Blackledge v. Allison, 431 U.S. 63, 74 (1977); Ross, 511 F.3d at 1236; United States v. Castello, 724 F.2d 814, 815 (9th Cir. 1984).

It appears that the real basis of Defendant's decision to withdraw his guilty plea is the Government's decision not to file a 5K1.1 motion for downward departure. See Affidavit of C. Stanley Hunterton (#132). However, "a change of heart" based on the Government's decision not to file a motion for downward departure is insufficient to demonstrate a fair and just reason to withdraw from the plea. Defendant has not met his burden. See Davis, 428 F.3d at 805.

To the extent that Defendant asserts he is in fact innocent of the charges to which he pleaded guilty, that claim must also fail. Defendant has not set forth any "newly discovered evidence" of innocence, "intervening circumstances," or a reason to believe he is not guilty "that did not exist when he entered his plea." See Ensminger, 567 F.3d at 590–91 ('Fair and just reasons for withdrawal include inadequate Rule 11 plea colloquies, newly discovered evidence, intervening circumstances, or any other reason for withdrawing the plea that did not exist when the defendant entered his plea.'(quoting Jones, 472 F.3d at 1141)). Defendant cannot now withdraw his plea based on his

8

unsupported claim that he is innocent of the charges to which he pleaded guilty. Moreover, Defendant swore at the change of plea hearing that he was in fact guilty of the crimes to which he pleaded guilty. These statements are presumed true in Defendant's attack on his guilty plea. See Ross, 511 F.3d at 1236–37.

In sum, considering the transcript of the plea hearing as a whole, the Court concludes that Defendant made sufficient factual admissions for his guilty plea to be accepted. Moreover, in the absence of any new information or evidence, Defendant's implication that he is innocent of the crimes to which he pleaded guilty is not by itself a fair and just reason to allow withdrawal of the guilty plea. Therefore, Defendant's Motion is denied.

III.  Conclusion

Accordingly, IT IS HEREBY ORDERED that Defendant Daniel Spencer's Motion to Withdraw Guilty Plea (#125) is **DENIED**.

DATED this 3rd day of December 2013.

_____
Kent J. Dawson
United States District Judge